IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES ROBERT HALL, | CASE NO. 1:25-CV-01147-DCN |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| | UNITED STATES DISTRICT JUDGE |
| v. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | CARMEN E. HENDERSON |
| Defendant, | **REPORT & RECOMMENDATION** |

## I. Introduction

Plaintiff, James Robert Hall ("Hall" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On April 3, 2022, Hall filed an application for DIB, alleging a disability onset date of March 8, 2013. (ECF No. 7, PageID #: 322). The application wase denied initially and upon reconsideration, and Hall requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 14, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*See id.* at PageID #: 337-63). After the hearing, Hall amended his alleged onset date to April 2, 2021. (*Id.* at PageID #: 658). On March 13,

1

2024, the ALJ issued a written decision finding Hall was not disabled. (*Id.* at PageID #: 322-32). The ALJ's decision became final on April 7, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 28-31).

On June 3, 2025, Hall filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Hall asserts the following assignments of error:

> (1) The ALJ erred when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.
>
> (2) The ALJ erroneously failed to comply with Social Security Ruling 16-3p when evaluating the totality of Plaintiff's symptoms.
>
> (3) The ALJ's finding that Plaintiff could perform work at the light level of exertion was not supported by substantial evidence.

(ECF No. 10 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Hall's hearing:

> The claimant alleges disability due to his physical and mental impairments. At the hearing, the claimant testified that he cannot work primarily due to depression, anxiety, and mental confusion. He indicated that at past jobs, his mind shut down when things get busy, and he often became angry, which results in him yelling at co-workers. According to the claimant, his mental confusion causes him to look in a cookbook for a recipe that he made for 20 years, he gets lost while driving, and he gets confused around the house while completing chores. Regarding physical health impairments, the claimant testified that he experiences issues with his hands shaking, he has a history of COPD, he was recently diagnosed with a heart aneurysm during a heart checkup last month, and he previously had one operation on his brain. The claimant stated that his hands are constantly tingling, he has

2

> difficulty holding onto objects or using buttons/zippers, he sometimes feels a surge up his chest, his ears become very loud, and he started taking Gabapentin one month ago, but it is not helpful so far. Regarding activities of daily living, the claimant testified that he has a driver's license and is able to drive, but he generally gets rides to places because he does not have a car. Finally, he said that on a typical day, he completes household chores, occasionally goes grocery shopping, and has trouble watching movies or shows because he struggles with maintaining concentration (hearing testimony).

(ECF No. 7, PageID #: 327).

### B. Relevant Medical Evidence

The ALJ also summarized Hall's health records and symptoms:

> The claimant has a history of degenerative disc disease of the cervical spine and emphysema.
>
> In September of 2022, the claimant obtained a pulmonary function test based on a history of COPD. This study was mostly normal, with a normal diffusing capacity, and the total lung capacity indicated hyperinflation (Exhibit 15F, pg. 9). In June of 2023, the claimant presented to the Neurological Institute of the Cleveland Clinic for an evaluation regarding paresthesias. According to the claimant, he was currently experiencing paresthesias that radiated down his arms and fingers, and a previous right upper extremity EMG was normal (Exhibit 13F, pg. 112). A physical examination performed at this time revealed that the claimant was alert and oriented to all spheres, cranial nerves were grossly normal, but there was slight decreased sensation on the right side of the face, and motor strength was four out of five on the right side in the fingers and deltoids (Exhibit 13F, pg. 116-117). In addition, the claimant's gait was normal, there was a downward response to plantar response bilaterally, and decreased sensation to vibration in the right upper and lower extremity distally and improving proximally (Exhibit 13F, pg. 118). Based on these findings, the claimant's provided [sic] diagnosed him with various conditions such as demyelinating disease of the central nervous system (Exhibit 13F, pg. 119). In July of 2023, the claimant obtained an MRI of the brain and cervical spine. The cervical spine MRI was unremarkable, without evidence of demyelinating lesions or myelomalacia. In addition, there was a moderate degree of narrowing of the left neural foramen due to facet arthropathy and uncovertebral hypertrophy, and no significant central canal

3

narrowing (Exhibit 13F, pg. 13). The MRI of the brain showed no acute intracranial abnormalities, no evidence of demyelinating lesions, and a previous left frontal craniotomy was evident with stable left temporal lobe encephalomalacia/gliosis (Exhibit 13F, pg. 31). The claimant also obtained an EEG study at this time, which showed evidence of cerebral dysfunction in the left frontotemporal region (Exhibit 13F, pg. 13).

In addition to the above physical impairments, the claimant has mental impairments including major depressive disorder, generalized anxiety disorder, and substance abuse (cannabis, alcohol, and cocaine use disorders). The claimant had some counseling and medication management sessions at Akron General Behavioral Medicine since the alleged onset date. In June of 2023, he presented there for a psychological evaluation, with reports that he was experiencing symptoms of depression and anxiety. According to the claimant, his current depressive symptoms included a lack of energy, trouble concentrating, reduced mood, and low motivation to complete daily tasks (Exhibit 14F, pg. 73). The claimant further reported that his anxiety symptoms included worrying all the trouble, difficulty relaxing, and limited-symptom panic attacks that occurred several times per week and were usually triggered by worry (Exhibit 14F, pg. 74). Treating notes from Akron General Behavioral taken in September of 2023 indicate that the claimant missed three appointments in a row, and he said it was due to transportation issues and confusion about the dates of appointments. According to the claimant, his mood was "a little up today," which he attributed to helping stop a thief at a cell phone store last night, he continued to experience anxiety symptoms that he struggled to manage, and he was working on reducing his alcohol consumption, with the goal of eventually quitting entirely (Exhibit 14F, pg. 9). Upon mental status examination at this time, the claimant was alert and oriented to all spheres, there was mild impairment to his attention and concentration skills, his mood was depressed and anxious, with a broad range of affect, there was no evidence of hallucinations or delusions, and his insight and judgment were good (Exhibit 14F, pg. 10). Based on these findings and reports, Dr. Alexander diagnosed the claimant with various impairments such as major depressive disorder – recurrent and mild, and generalized anxiety disorder (Exhibit 14F, pg. 11).

(ECF No. 7, PageID #: 327-29).

IV. **The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

2. The claimant has not engaged in substantial gainful activity since April 2, 2021, the amended alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, emphysema, major depressive disorder, generalized anxiety disorder, and substance abuse (cannabis, alcohol, and cocaine use disorders) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs, and balancing; frequently stooping; avoid concentrated exposure to extreme heat/cold, humidity, and pulmonary irritants such as fumes, odors, dusts, gases, or poorly ventilated areas; no exposure to workplace hazards; limited to simple instructions; limited to routine, repetitive tasks; and no more than infrequent workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

    …

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 2, 2021, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 7, PageID #: 324-27, 330-31).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R.

§ 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Hall raises three issues on appeal: (1) the ALJ erred when he failed to properly apply the criteria of Social Security Ruling ("SSR") 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation; (2) the ALJ erroneously failed to comply with SSR 16-3p when evaluating the totality of Plaintiff's symptoms; and (3) the ALJ's finding that Plaintiff could perform work at the light level of exertion was not supported by substantial evidence. (ECF No. 10 at 1).

#### 1. Consideration of All Impairments

Plaintiff first argues the ALJ failed to consider all of his impairments because "[n]o mention was made … regarding Plaintiff's complaints regarding the paresthesia, numbness, and tingling in his upper extremities or his memory complaints or the fact that he was currently observed with a cane." (ECF No. 10 at 9). Plaintiff asserts the ALJ "continued through the sequential evaluation and clearly failed to consider any of these impairments and their related

7

limitations when forming his RFC." (*Id.* at 11). Thus, Plaintiff argues "the ALJ erroneously did not build an accurate and logical bridge between the evidence documenting Plaintiff's disabling problems and the ALJ's decision to deny benefits." (*Id.* at 12).

The Commissioner responds that rather than identifying specific impairments the ALJ failed to find severe, the Plaintiff merely identifies subjective complaints. (ECF No. 12 at 6-7). As to the need for a cane, the Commissioner argues Plaintiff made "no attempts whatsoever to show a cane was required under the Agency's rules" as set forth in SSR 96-9p. (*Id.* at 7). Regardless, the Commissioner argues "the ALJ considered Plaintiff's impairments in crafting the RFC and specifically discussed Plaintiff's alleged paresthesia, numbness, tingling, memory issues, and gait limitations later in the decision." (*Id.*).

Plaintiff replies that "the ALJ herein improperly failed to consider the totality of the functional limitations when creating his RFC and finding that Plaintiff was capable of performing work at the light level of exertion with no limitations regarding the use of his upper extremities or needing a cane." (ECF No. 13 at 1-2).

As an initial matter, to the extent Plaintiff's argument can be interpreted as a challenge to the ALJ's step two determination regarding the severity of Plaintiff's impairments, any error at step two is harmless because the ALJ concluded Plaintiff had at least one severe impairment and proceeded through the sequential evaluation. *See Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) ("[B]ecause an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two does not constitute reversible error." (citation modified)). Rather, Plaintiff's challenge is more appropriately considered at step four in relation to his RFC.

At step four, the ALJ must determine a claimant's RFC by considering all relevant

8

medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

Here, the undersigned agrees with the Commissioner that the "impairments" Plaintiff identifies as failing to be considered by the ALJ are actually subjective complaints. Regardless, contrary to Plaintiff's argument, the ALJ did discuss Plaintiff's complaints regarding his upper extremities and memory problems in crafting the RFC. Specifically, the ALJ noted that while Plaintiff complained of paresthesias in his arms and fingers, physical examination showed only "slight decreased sensation on the right side of the face, and motor strength was four out of five on the right side in the fingers and deltoids." (ECF No. 7, PageID #: 328 (citing *id.* at PageID #: 1784-85)). The ALJ determined these findings were consistent with the reduced range of light work set forth in the RFC. (*Id.* at PageID #: 329). As to Plaintiff's mental impairments, the ALJ explained that "the claimant's allegations of 'brain confusion' are not supported by the record or a specific etiology, and the above residual functional capacity accommodates deficits in maintaining attention and concentration/understanding, remembering, and carrying out

9

instructions." (*Id.*). Based on this discussion, it is clear the ALJ considered these complaints in rendering the RFC but found that they did not warrant additional limitations.

Plaintiff is correct that the ALJ did not discuss his alleged cane use or explain why a limitation regarding a cane was not included in the RFC. (*See generally* ECF No. 7, PageID #: 322-32). However, as the Commissioner argues, Plaintiff has failed to show that a cane was medically necessary under the relevant regulations. As explained in SSR 96-9p, an ALJ should find that a hand-held assistive device is medically required only where there is medical documentation establishing the need for such a device to aid in walking or standing, and describing the circumstances for which it is needed (i.e. whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). *Jones v. Comm'r of Soc. Sec.*, 815 F. App'x 926, 931 (6th Cir. 2020) (citing SSR 96-9p, 1996 WL 374185, at *7). Here, Plaintiff identifies only two instances where Plaintiff's "history of cane use" was noted by providers and a single report of being a fall risk. (*See* ECF No. 7, PageID #: 432, 1678, 1786). However, this minimal evidence falls far short of establishing the medical need for a cane under SSR 96-9p. Further, Plaintiff did not indicate in his testimony or his function report that he needed a cane and repeatedly denied falls and cane use to medical providers. (*See, e.g. id.* at PageID #: 90, 106, 380, 677, 774, 1388, 1965). Accordingly, the ALJ did not err in failing to discuss Plaintiff's cane use. *See Jones*, 815 F. App'x at 931 (where record contained only a single mention of cane use, the ALJ "was not required to discuss such minimal evidence, especially given that no other evidence in the record supports a finding that a cane was medically necessary, and [plaintiff] never mentioned the need for a cane in his testimony").

Overall, the decision indicates that the ALJ considered all of Plaintiff's impairments in

crafting the RFC and substantial evidence supports the ALJ's RFC.

### 2. Symptom Testimony

Plaintiff next argues the ALJ failed to comply with the criteria of SSR 16-3p for considering Plaintiff's symptom testimony. (ECF No. 10 at 13). Plaintiff argues the ALJ failed to provide adequate explanation for his conclusion that the medical records did not support limitations beyond those included in the RFC, and because "[t]he testimony and medical evidence established the limited nature of Plaintiff's daily activities and the difficulties he had due to his symptoms," substantial evidence did not support the ALJ's decision. (*Id.* at 16-17).

The Commissioner responds that "[d]espite Plaintiff's protestations otherwise, the ALJ properly evaluated his subjective symptoms and an ALJ's subjective symptom determination is given great weight and deference." (ECF No. 12 at 12 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003))). The Commissioner asserts the ALJ considered "the location, duration, frequency, and intensity of Plaintiff's symptoms along with precipitating and aggravating factors, as well as the effectiveness of Plaintiff's medication, treatments that he received other than medication, and other measures he used to relieve his symptoms" as well as Plaintiff's daily activities. (*Id.* at 13-14). The Commissioner argues all of these were appropriate factors to consider in determining whether to find Plaintiff's statements credible. (*Id.*).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20

11

C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304. Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ summarized Plaintiff's symptom testimony but concluded that "the medical evidence is consistent with the residual functional capacity" the ALJ ultimately adopted. (ECF No. 7, PageID #: 327). The ALJ then provided a summary of the medical evidence and provided the following explanation for finding Plaintiff's symptom testimony not fully credible:

> The claimant's allegations are determined to be less than fully consistent with the evidence. The nature and degree of pain and

12

> functional limitations alleged by the claimant is not supported by medical and non-medical sources. Diagnostic test results and physical examination findings have been largely unremarkable, and the claimant had a mostly conservative treatment history for his physical health impairments since the alleged onset date such as taking pain medications. For example, a physical examination performed in June of 2023 revealed that the claimant was alert and oriented to all spheres, in no acute distress, cranial nerves were grossly normal, but there was slight decreased sensation on the right side of the face, and motor strength was four out of five on the right side in the fingers and deltoids (Exhibit 13F, pg. 116-117). Likewise, MRI's of the cervical spine and brain/EEG studies were largely unremarkable (Exhibit 13F, pg. 13, 31). Moreover, the claimant's allegations of "brain confusion" are not supported by the record or a specific etiology, and the above residual functional capacity accommodates deficits in maintaining attention and concentration/understanding, remembering, and carrying out instructions.
>
> Regarding the consistency of the claimant's mental health allegations, he admitted seeing a positive response to his psychotropic medications and counseling sessions despite his prolonged history of alcohol/substance abuse, without significant medication side effects, and there is no evidence of psychiatric hospitalization in the record. Additionally, the claimant reported mostly mild to moderate symptoms to providers at Akron General Behavioral and other sources, and during his psychological consultative examination with Dr. Magleby, without evidence of hallucinations, delusions, obsessions, compulsions, cognitive disorder, current suicidal/homicidal ideation, or other serious issues (Exhibit 4F; 9F; 11F; 14F). Thus, there are no indications in the medical record of limitations beyond the performance of light level work with the non-exertional restrictions listed above.

(*Id.* at PageID #: 329).

This discussion shows that the ALJ properly considered Plaintiff's symptom allegations in accordance with SSR 16-3p. The ALJ found that the objective medical evidence did not support the severity of Plaintiff's allegations given unremarkable diagnostic test results and examination findings. (*See id.* at PageID #: 1180-82, 1514, 1681, 1784-86, 1918, 1941-42, 2006). The ALJ also noted the conservative nature of Plaintiff's treatment. (*See id.* at PageID #:

13

1514 (denying medication in favor of counseling)). Substantial evidence supports the ALJ's conclusion. Thus, the Court must defer to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### 3. Light Work RFC

Finally, Plaintiff argues substantial evidence does not support the ALJ's finding that he could perform work at the light level of exertion because "[o]bjective evidence supported the fact that Plaintiff was unable to stand/walk and/or use his arms and hands for the time necessary to perform work at the light level of exertion." (ECF No. 10 at 18-19). Plaintiff argues the ALJ "erroneously failed to include any limitations related to his continuing numbness and tingling resulting in an inability to even button clothes" and also "failed to include any limitations related to [his] continuing confusion." (*Id.* at 20). Thus, Plaintiff argues the RFC did not account for all of his limitations such that there was not substantial evidence to support the step five conclusion that other work existed that Plaintiff could perform. (*Id.* at 21).

The Commissioner responds that "[i]n determining that Plaintiff could perform light work, the ALJ properly considered the objective and opinion evidence" and "Plaintiff's argument is little more than a recitation of the facts most favorable to him with a request for a *de novo* review of the evidence." (ECF No. 12 at 8). The Commissioner highlights the ALJ's consideration of relatively normal medical examinations and medical opinion evidence as substantial evidence supporting the ALJ's decision. (*Id.* at 8-11).

Although presenting this argument as a challenge to the ALJ's step five determination, Plaintiff is merely renewing his challenge to the ALJ's RFC determination and asserting that because the RFC did not account for all his limitations, it could not support the ALJ's step five

14

determination. However, as discussed above with respect to Plaintiff's earlier arguments, the ALJ considered all of Plaintiff's impairments in formulating the RFC and substantial evidence supports the ALJ's decision. While Plaintiff argues the objective evidence supports additional limitations, he largely cites to his own subjective complaints within the medical records rather than objective findings or medical opinions supporting additional limitations. Thus, as the Commissioner asserts, it appears Plaintiff is simply highlighting favorable facts and asking the Court to reach a different conclusion than the ALJ. However, it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Plaintiff's final argument is without merit.

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Hall's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: January 5, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).